IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| BEVERLY DVORAK, | ) | CASE NO. 1:15 CV 2319 |
| | ) | |
| Plaintiff, | ) | |
| | ) | MAGISTRATE JUDGE |
| v. | ) | WILLIAM H. BAUGHMAN, JR. |
| | ) | |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY, | ) | **MEMORANDUM OPINION AND** |
| | ) | **ORDER** |
| Defendant. | ) | |

## Introduction

Before me[1] is an action by Beverly Lynn Dvorak under 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of Social Security denying her applications for disability insurance benefits and supplemental security income.[2] The Commissioner has answered[3] and filed the transcript of the administrative record.[4] Under my initial[5] and

---

[1] ECF # 21. The parties have consented to my exercise of jurisdiction.

[2] ECF # 1.

[3] ECF # 8.

[4] ECF # 9.

[5] ECF # 5.

procedural[6] orders, the parties have briefed their positions[7] and filed supplemental charts[8] and the fact sheet.[9] They have participated in a telephonic oral argument.[10]

## Facts

**A.     Background facts and decision of the Administrative Law Judge ("ALJ")**

Dvorak who was 53 years old at the time of the administrative hearing,[11] graduated high school[12] and lives with her daughter and boyfriend.[13] Her past relevant employment experience includes work as a cashier and accounting clerk.[14]

The ALJ, whose decision became the final decision of the Commissioner, found that Dvorak had the following severe impairments: degenerative arthritis of lumbosacral spine with foraminal stenosis, degenerative changes of cervical spine, and history of labyrinthine disorder (20 CFR 404.1520(c) and 416.920(c)).[15]

---

[6] ECF # 10.

[7] ECF # 19 (Commissioner's brief); ECF # 13 (Dvorak's brief).

[8] ECF # 19-1 (Commissioner's charts); ECF # 13-1 (Dvorak's charts).

[9] ECF # 14 (Dvorak's fact sheet).

[10] ECF # 25.

[11] ECF # 14 at 1.

[12] *Id.*

[13] ECF # 9, Transcript ("Tr.") at 40.

[14] *Id.* at 21.

[15] *Id.* at 17.

After concluding that the relevant impairments did not meet or equal a listing, the ALJ made the following finding regarding Dvorak's residual functional capacity ("RFC"):

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b), except she cannot climb ladders, ropes, or scaffolds; can frequently climb ramps and stairs; can frequently perform balancing, stooping, kneeling, crouching, crawling and overhead reaching; and should have no exposure to hazards, meaning no heights, machinery, or commercial driving (20 CFR 404.1569a and 416.969a).[16]

Given that residual functional capacity, the ALJ found Dvorak capable of her past relevant work as an accounting clerk and cashier and, therefore, not under a disability.[17]

**B.     Issues on judicial review**

Dvorak asks for reversal of the Commissioner's decision on the ground that it does not have the support of substantial evidence in the administrative record. Specifically, Dvorak presents the following issues for judicial review:

- Whether the ALJ erred in failing to perform a proper pain analysis.[18]

- Whether the ALJ erred when he determined that plaintiff's mental health impairments were not severe impairments.[19]

For the reasons that follow, I will conclude that the ALJ's finding of no disability is supported by substantial evidence and, therefore, must be affirmed.

---

[16] *Id.* at 19.

[17] *Id.* at 21.

[18] ECF # 13 at 1.

[19] *Id*.

## Analysis

**A.   Standard of review**

*1.   Substantial evidence*

The Sixth Circuit in *Buxton v. Halter* reemphasized the standard of review applicable to decisions of the ALJs in disability cases:

> Congress has provided for federal court review of Social Security administrative decisions. 42 U.S.C. § 405(g). However, the scope of review is limited under 42 U.S.C. § 405(g): "The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive...." In other words, on review of the Commissioner's decision that claimant is not totally disabled within the meaning of the Social Security Act, the only issue reviewable by this court is whether the decision is supported by substantial evidence. Substantial evidence is " 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' "
>
> The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. This is so because there is a "zone of choice" within which the Commissioner can act, without the fear of court interference.[20]

Viewed in the context of a jury trial, all that is necessary to affirm is that reasonable minds could reach different conclusions on the evidence. If such is the case, the Commissioner

---

[20] *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001) (citations omitted).

survives "a directed verdict" and wins.[21] The court may not disturb the Commissioner's findings, even if the preponderance of the evidence favors the claimant.[22]

I will review the findings of the ALJ at issue here consistent with that deferential standard.

**B.     Application of standards**

Dvorak here argues that the ALJ failed to properly analyze her complaints of disabling spinal pain,[23] and that the ALJ erred by not finding her mental impairments to be severe.[24] The allegations will be addressed individually below.

*1.    Pain analysis*

Dvorak maintains that the ALJ in this instance failed to consider all seven factors set forth by the regulations concerning pain, while conceding that a valid analysis need only demonstrate that all the evidence relevant to the pain complaint has been considered.[25]

Initially, at Step Two the ALJ found that Dvorak's degenerative arthritis of the lumbosacral spine with foraminal stenosis and degenerative changes of the cervical spine

---

[21] *LeMaster v. Sec'y of Health & Human Servs.*, 802 F.2d 839, 840 (6th Cir. 1986); *Tucker v. Comm'r of Soc. Sec.*, No. 3:06CV403, 2008 WL 399573, at *6 (S.D. Ohio Feb. 12, 2008).

[22] *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007).

[23] ECF # 13 at 8 -11.

[24] *Id.* at 12 - 14.

[25] *Id.* at 9 (citing *Cross v. Comm'r of Soc. Sec.*, 373 F. Supp. 2d 724, 732-33 (N.D. Ohio 2005)).

-5-

were severe impairments.[26] At Step Three the ALJ concluded that neither of these impairments, or any combination of them, met or equaled the relevant listings.[27] As to Listing 1.04, the ALJ noted that in the case of these two impairments, neither one was accompanied by a finding that they compromised the nerve root of the spinal cord with evidence of nerve root compression "characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight leg raising test."[28]

The ALJ then discussed Dvorak's own testimony about the limiting effects of her pain, noting that she stated that the pain was an "8 or 9 on a 1-10 scale," that "[m]edication does help" with the pain, and that she previously participated in physical therapy, but does not wear a TENS unit and has not had surgery.[29]

The ALJ then noted the medical evidence, including a report from "Dr. Steven Archaki, M.D.,"[30] shows that Dvorak does indeed have back pain from her physical impairments, but also found that she has "normal range of motion, no edema or joint

---

[26] Tr. at 17.

[27] *Id*. at 18.

[28] *Id*.

[29] *Id*. at 19-20.

[30] The ALJ renders the name as "Steven Archaki," while the records show it is properly "Stephen Archarcki." *See, id.* at 308. For her part, Dvorak renders it alternatively as "Stephen Archacki" (ECF # 13 at 9) and "Stephen Archak." (ECF # 13, Attachment at 2).

tenderness, negative straight leg raising and normal motor strength."[31] The ALJ further observed that the treatment Dvorak has received for her back condition "has been conservative and symptomatic, including medication and physical therapy."[32]

He then considered the records from the Cleveland Clinic Pain Management Center, where he observed that Dvorak told them that her low back pain was "3 at best on a 1-10 scale and 6-7 at worst" - a pain level, the ALJ noted, that was "lower than the 8-10 level she testified to at the hearing."[33] Dvorak reported a higher level of pain the next month, after taking a car trip out of state over the weekend.[34] The ALJ determined that undertaking such a trip was itself inconsistent with Dvorak's testimony as to her limitations at the hearing,[35] which included the statement that she could sit for only 30 minutes at a time.[36] The ALJ also directly noted that at the end of the period of physical therapy, Dvorak self-described her level of pain as "2/10."[37]

---

[31] Tr. at 20.

[32] *Id*. (citing record).

[33] *Id*.

[34] *Id.*

[35] *Id*.

[36] *Id*. at 19.

[37] *Id*. at 20 (citing record).

Additionally, the ALJ addressed the functional opinion of Dvorak's physical therapist, Thomas O'Maille.[38] After initially finding that this opinion was based in part on Dvorak's own subjective claims of her functional limitations, such as on her answers to a questionnaire,[39] the ALJ noted that O'Maille only had a relationship with Dvorak for three weeks when he offered a functional capacity opinion.[40] Moreover, the ALJ took note of the fact that physical therapists are not acceptable medical sources for functional opinions.[41]

Finally, the ALJ stated that he was not adopting the prior physical residual functional capacity findings of the ALJ in a prior case, which were followed by the State agency reviewer, but was reviewing the new evidence supplied in this matter and so finding a less restrictive RFC.[42]

Dvorak's arguments here center on the fact that the ALJ did not discuss specific items, such Dr. Archaki's diagnosis of chronic pain syndrome, and the particular examination notes from her physical therapist that record various limitations to her range of motion and decreases of strength.[43] She also contends that a more complete analysis would have discussed how her pain affected her ability to sit, stand and walk, and how it interfered with

---

[38] *Id*.

[39] *Id*. (citing record).

[40] *Id*. (citing record).

[41] *Id*. (citing regulations).

[42] *Id*. at 21(citing record).

[43] ECF # 13 at 9 -10.

sleep, thus potentially disrupting concentration, causing absenteeism, and requiring extra breaks.[44]

While Dvorak is correct that disabling pain will surely have an effect on things like sleep and on the ability to comfortably sit, walk or stand, the essential findings of the ALJ were that Dvorak's allegation as to the level of her pain was not credible and so the pain was not disabling, thus obviating any further discussion of how disabling pain might interact with other activities. To that end, the critical findings were that Dvorak herself rated her pain as only minimal - a 2 out of 10 - at the end of her physical therapy, her own testimony that medication helps relieve the pain, the fact that she undertook a long car trip to Georgia and that she has "no limitations" in her activities of daily living.[45]

In the end, Dvorak's own testimony about the levels of pain after physical therapy, as well as about her own activities, provides sufficient evidence to find that her complaints of pain are not credible and that whatever the level of pain may be, it is not disabling.[46] The mere fact that Dr. Archacki diagnosed her with chronic pain syndrome[47] is not, of itself, any evidence of the severity of that condition,[48] nor - absent any particular evidence of severity -

---

[44] *Id.* at 11.

[45] *See*, tr. at 17

[46] *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 392-93 (6th Cir. 2004).

[47] ECF # 13 at 9.

[48] *See, Noel v. Astrue,* No. 4:12 CV 1062, 2013 WL 1728890, at * 7 (N.D. Ohio March 18, 2013)(collecting cases); R&R adopted, *Noel v. Comm'r of Soc. Sec*., No. 4:12 CV 1062, 2013 WL 1728888 (N.D. Ohio April 22, 2013).

does a mere diagnosis require a further discussion in the credibility analysis regarding her claims of pain.

Therefore, inasmuch as the ALJ here considered the relevant and applicable factors set forth in the regulations concerning an evaluation of a complaint of disabling pain, as is set forth above, including the objective medical evidence, the reports of treating or examining physicians, and the claimant's own testimony, I find that there is no "compelling reason" in the record to disturb the conclusion of the ALJ in this regard,[49] which is otherwise supported by substantial evidence, and is entitled to "great weight and deference" by the reviewing court.[50]

## 2. *Severity of mental impairments*

Dvorak argues here that the ALJ erred at Step Two in not finding that her mental impairments were severe.[51]

In this instance, the ALJ determined, as did the previous ALJ, that there was no severe mental impairment.[52] In support of that finding, the ALJ noted that Dvorak's treating internist, Dr. Archacki, reported no mental impairment, but further observed that treatment records from the Cleveland Free Clinic show that she was being treated for mild anxiety

---

[49] *Smith v. Halter,* 307 F. 3d 377, 379 (6th Cir. 2001).

[50] *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997).

[51] ECF # 13 at 12.

[52] Tr. at 17.

every three weeks, and was taking Zoloft for that condition.[53] The ALJ also noted that a psychological consultative examination by Jeff Rindsberg, Ph. D., found that Dvorak had a generalized anxiety disorder with a GAF score of 65, which the ALJ observed, "indicat[ed] mild symptoms and functional limitations."[54]

Moreover, the ALJ examined Dvorak's level of functioning in the four areas of functioning frequently referred to as the "paragraph B" criteria of Listing 12.00C, which deals with evaluating mental disorders.[55] In that review, the ALJ found that Dvorak has:

- "no limitation" in the area of activities of daily living, citing her ability to shop, handle money, assist in the care of her mother and her pets, and drive herself;

- "mild limitation" in the area of social functioning, noting that Dvorak goes out to lunch or dinner with friends, and attends a high school alumni meeting once a week;

- "mild limitation" in the area of maintaining concentration, persistence and pace, here observing that despite Dvorak's complaints in this area, the results of tests administered by Dr. Rindsberg show that she can "maintain attention and concentration to perform simple and multi-step tasks;" and

- no limitation as the result of episodes of decompensation since "the claimant has experienced no episodes of decompensation that have been of extended duration."[56]

---

[53] *Id.* (citing record).

[54] *Id.* (citing record).

[55] *Id.* (citing 20 C.F.R., Part 404, Subpart P, Appendix 1).

[56] *Id.* at 17-18 (citing record).

Therefore, the ALJ concluded that "because [Dvorak's] medically determinable mental impairment causes no more than 'mild' limitation in any of the first three functional areas and 'no' episodes of decompensation which have been of extended duration in the fourth area, it is non-severe."[57]

While Dvorak contends that the medical records show that her anxiety and worry were affecting her sleep and concentration, and so having more than a *de minimus* effect on her ability to perform work-related functions,[58] the only medical source in the record to provide an opinion as to the extent of any functional limits arising from Dvorak's mental condition was that of Dr. Rinsberg, which opinion, as noted, the ALJ cited often and relied upon in concluding that any mental impairment was only "mild" and not severe. As I noted in *Smith v. Commissioner of Social Security*,[59] an ALJ may properly rely on the opinion of an acceptable medical source as to the severity of claimant's impairment.[60] That reliance would seem particularly appropriate when, as here, that opinion as to severity is not contradicted by any other acceptable medical source opinion in the record.

I find no error in the ALJ determination that Dvorak's mental impairment was not severe.

---

[57] *Id*. at 18 (citing regulations).

[58] ECF # 13 at 13-14.

[59] *Smith v. Comm'r of Soc. Sec*., No. 5:13 CV 870, 2014 WL 1944247 (N.D. Ohio May 14, 2014).

[60] *Id*. at * 9 (citations omitted).

## Conclusion

Substantial evidence supports the ALJ's findings that Dvorak did not have a severe mental impairment and spinal impairments did not cause limitations beyond those set out in the RFC.  The decision of the Commissioner, therefore, is hereby affirmed.

IT IS SO ORDERED.

Dated: February 7, 2017                              s/ William H. Baughman, Jr.
                                                     United States Magistrate Judge